IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Darnelle Hudson, | ) | Case No.: 4:20-cv-2944-JD-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER AND OPINION |
| Ms. Joette Scarborough, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court with the Report and Recommendation ("Report") of United States Magistrate Judge Thomas E. Rogers, III (DE 96), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) of the District of South Carolina concerning Defendant Joette Scarborough's ("Defendant" or "Scarborough") Motion for Summary Judgment (DE 89).[1]

**A. Background**

The Report sets forth the relevant facts and legal standards, which the Court incorporates without a complete recitation. In any event, the Court provides this summary as a brief background.

Plaintiff, proceeding *pro se*, brings this action under 42 U.S.C. § 1983 against Defendant, alleging violations of his civil rights while incarcerated at the Kershaw

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

Correctional Institution (KCI). Plaintiff sued Scarborough, a classification employee, in her individual capacity, alleging that his rights were violated between March 20, 2018, and October 7, 2018, while housed at the KCI.[2] (DE 1.) Plaintiff asserts that he was held by Scarborough on lock-up on security detention (SD) in the restrictive housing unit (RHU) at KCI for more than seven months past his completion of SD time. (*Id.*)

Plaintiff contends that he was recommended for removal from SD custody by the RHU Classification Committee Review (Committee) on February 8, 2018, after completing 18 months in SD custody without disciplinary charges. (*Id.*; DE 94-1 at 2). When he was not removed from SD, Plaintiff submitted an Inmate Request form, in which he inquired about why he was still being held on lockup. (*Id.*) The response stated that he was recommended to be removed from SD on February 8, 2018, and approved by Central Classification, and was placed in "Awaiting Program" Custody Level 3 (AP3) status, meaning he was waiting to be transferred to a program. (*Id.*; DE 94-1 at 4.) On April 11, 2018, Plaintiff submitted another Request to Staff form asking why he was still being held in RHU lock-up. (*Id.*; DE 94-1 at 5.) The response stated that he was waiting for Central Classification to transfer him. (*Id.*)

On July 5, 2018, Plaintiff submitted a Request to Staff form stating that he went before the SD Board on May 20, 2018, and was recommended for release from SD custody, but he had not been transferred out of RHU. (*Id.*; DE 94-1 at 12.) As for Scarborough's conduct, Plaintiff argues that while he was on AP3 status, he was not

---

[2]    Plaintiff was released to Perry Lifer's Program on October 10, 2018, before filing this complaint on August 13, 2020.

released to the general population or transferred from the KCI lockup to a step-down program. The Plaintiff claims that after Scarborough became aware that he had filed a Step 1 grievance on August 1, 2018, to exercise his right to be released from lock-up, she removed him from AP3 status. Plaintiff argues that Scarborough placed him back on SD without notice of the charges and without notice of a hearing. He also contends that he was deprived of his right to be present at the security detention placement and to give testimony and was denied his right to appeal the decision.

Plaintiff alleges he had the right to be present at the hearing and to appeal the decision. Plaintiff alleges that Defendant placed him back on SD lockup to "mentally and emotionally hurt me." (DE 1-1 at 8.) In the complaint, Plaintiff contends that he suffered "mental anguish, anxiety, hurt, emotional strain, severe depression and last I suffered with severe headaches, loss of sleep, appetite, weight and physical freedom from confinement." (DE 1 at 6.) Plaintiff alleges Defendant Scarborough intentionally retaliated against him to punish him for exercising his First Amendment right to file a grievance and request to be released from SD detention, which caused him mental anguish and loss of privileges. Plaintiff seeks monetary damages.

On April 26, 2024, Scarborough moved for Summary Judgment, asserting Plaintiff has no facts to support an Eighth or Fourteenth Amendment violation and that she is entitled to qualified immunity. Scarborough also claims in her declaration, among other things,

> 29. All decisions that I made in my capacity as a member of the Team were as part of the Team. I could not do anything on my own. All decisions were unanimous. Even if I had voted differently, my one vote would not have made any difference to Plaintiff's status or outcome. The

3

majority rules for the Team's decisions. The only decisions keeping Plaintiff on SD were when the Team decided Plaintiff should remain on SD because of separation concerns or to be reviewed for a different program. Plaintiff was never made to stay in SD for no reason. Plaintiff was never made to stay in SD by the Team without trying to find a place for him to go.

30. In my capacity as Division Director and as a member of the Team, there is absolutely no way that I personally could have secured the Plaintiff's release from SD and RHU. Policy and practice simply did not allow for one administrator to wield that type of control over an inmate's custody. For example, one person cannot unilaterally place an inmate on SD. Vice versa, one person cannot dictate an inmate's release from SD.

31. It is my understanding that Plaintiff alleges I took him off AP3 status after he filed a grievance about his failure to be released from RHU. Plaintiff is incorrect.

32. I was not aware that Plaintiff had filed a grievance concerning any of these matters until Plaintiff filed a Step 2 grievance on or about August 7, 2018. [Grievance No. KRCI 0712-18, attached as Exhibit 6] I was the responsible official that responded to Plaintiff's Step 2 grievance form. I prepared this response on October 10, 2018. I would not have known about this grievance until such time as the Step 2 form was sent to me for a decision, on or after August 7, 2018.

33. The Team's decision to have Plaintiff remain on SD while looking for space in a BMU was made on April 27, 2018. This was long before Plaintiff filed the grievance of which I was aware. This grievance had no bearing whatsoever on any decisions made by me or the Team.

34. I was not aware of any other grievances filed by Plaintiff. The only reason I became aware of Grievance No. KRCI 0712-18 is because Plaintiff filed a Step 2 grievance and it came to me for decision. Unless Plaintiff filed a Step 2 grievance concerning classification issues, I would not have known about it.

35. I did not take any votes to keep Plaintiff on SD because he had filed Grievance No. KRCI 0712-18 or any other grievance.

36. I was never aware of any requests to staff or kiosk requests concerning classification issues. In my role as Division Director, requests to staff would not have come to me. These requests are usually handled at the institution level. I have recently reviewed the kiosk

4

requests submitted by Plaintiff during the relevant time frame. None of
the kiosk requests came to me or were answered by me.

(DE 89-2 ¶¶ 29-36.)

On May 1, 2024, under *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the

Magistrate Judge advised Plaintiff of the motion for summary judgment procedure

and the possible consequences if he failed to respond to the motion adequately. (DE

90.) Plaintiff filed a response in opposition (DE 94), and Scarborough replied. (DE 95.)

### B. Report and Recommendation

On November 14, 2024, the Magistrate Judge issued the Report,

recommending that this Court grant Defendant's motion for summary judgment. (DE

89.) As to Plaintiff's Eighth Amendment claim, the Report found:

> Plaintiff has failed to show how Defendant is personally responsible for
> Plaintiff's conditions of confinement in RHU. Plaintiff has not identified
> how Plaintiff was responsible for any specific deprivations while housed
> in the RHU.

(DE 96 at 15.) As for Plaintiff's Due Process claim, the Report found that "Plaintiff

has failed to show that the conditions of the RHU imposed an atypical and significant

hardship in relation to the ordinary incidents of prison life and there was no due

process violation." (DE 96 at 23.) Lastly, as to Plaintiff's Retaliation claim, the Report

stated:

> Defendant Scarborough was part of the Team that reviewed the
> Committee's recommendations. She was one of three that voted on the
> Team and could not alone remove Plaintiff from AP3 status without a
> vote by the other two members. Additionally, there is no evidence that
> Defendant was aware that Plaintiff had filed a grievance until she
> received the Step 2 Grievance form he filed on August 7, 2018, to issue
> a response. The grievances were filed against the 'justification/Decisions
> of the RHU Multi-Disciplinary Team' to keep me on security detention.'
> (ECF No. 89-2 at 90). As set forth above, the Team voted to remove the

AP3 status on April 27, 2018, after learning that Plaintiff could not be transferred to Perry. The Step 1 Grievance was dated July 31, 2018, by Plaintiff and received on August 2, 2018. It was processed and responded to by the Warden on August 6, 2018. Thus, the decision to remove Plaintiff from AP3 status was made prior to Plaintiff filing his Step 1 grievance and certainly before Defendant received the Step 2 Grievance to respond.

(*Id*. at 25.) Plaintiff did not object to the Report.

### C. Legal Standard

In the absence of objections to the Report and Recommendation, this Court is not required to give any explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). The Court must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

### D. Conclusion

Because Plaintiff has not objected, after a thorough review of the Report and Recommendation and the record in this case, the Court finds no clear error on the face of the record. Thus, the Court adopts the Report (DE 96) and incorporates it here by reference.

It is, therefore, **ORDERED** that Defendant's Motion for Summary Judgment (DE 89) is granted, and this case is dismissed.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
March 24, 2025

**NOTICE OF RIGHT TO APPEAL**

6

The parties are hereby notified of the right to appeal this order within thirty (30) days from this date under Rules 3 and 4 of the Federal Rules of Appellate Procedure.